GLENN R. WAITE, PERSONAL REPRESENTATIVE OF THE ESTATE OF HARRIET I. WAITE, DECEASED, APPELLANT, v. W. SCOTT CARPENTER, M.D., ET AL., APPELLEES.

496 N.W.2d 1

Filed October 27, 1992.    Nos. A-91-923, A-91-924, A-91-925.

Jim L. Brown, of Dawson & Brown, P.C., for appellant.

William M. Lamson, Jr., and Mark E. Novotny, of Kennedy, Holland, DeLacy & Svoboda, for appellees Carpenter et al.

James A. Snowden and Paula J. Metcalf, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Regional West Medical Center.

SIEVERS, Chief Judge, and CONNOLLY and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

An allegation of the unauthorized practice of law resulted in an evidentiary hearing and in the district court for Scotts Bluff County's dismissal of these three cases, which we have combined for our review and opinion.

## THE PARTIES AND THE PLEADINGS

These three lawsuits were filed by Glenn R. Waite, personal representative of the estate of Harriet I. Waite, deceased, and alleged acts of negligence against Harriet Waite. Waite was appointed personal representative of Harriet Waite's estate on January 2, 1991, by the county court for Sheridan County, Nebraska. Thereafter, a number of lawsuits were filed, including these three on April 8, 1991. Styled as "Complaint[s]," these suits named 10 defendants, which included a hospital, a medical group, 5 doctors, 2 registered nurses, and 1 licensed practical nurse.

The first "Complaint" filed was a negligence claim for failure to render appropriate professional services in the diagnosis and treatment of polymyositis from November 25, 1986, to April 17, 1989 (case No. A-91-923); the second

negligence "Complaint" alleged the failure to render professional services in the diagnosis and treatment of a neurological injury, central pontine myelinolysis with aspiration pneumonia, from April 2 to 17, 1989 (case No. A-91-924); and the third "Complaint" alleged the failure to protect the "subject from harm" and to supervise "the quality of care" during the time period of April 14 to 17, 1989 (case No. A-91-925).

In two of these three lawsuits, a series of five "Complaint[s]" for damages was filed. In the third lawsuit, four "Complaint[s]" were filed. The final "Complaint" in each case was filed in late June to mid-July 1991. In the interest of limiting this opinion to that which is germane, we dispense with the particulars of the "Complaint[s]." It is sufficient to state that the actions asserted negligence in numerous respects on the part of the named health care providers, which negligence ceased on April 17, 1989. Although it is clear from the pleadings that Harriet Waite is deceased, her date of death is not specifically alleged, nor is her relationship with Waite set forth, except that he is the personal representative of her estate. However, each of the first three "Complaint[s]" states that the relief sought is to recover damages for "the next of kin."

The defendants, through their attorneys, filed a variety of pleadings, including demurrer, motion for nonresident cost bond, motion to make more definite and certain, motion to strike or in the alternative to make more definite and certain, motion for summary judgment, and motion to strike pleadings and to dismiss. It is clear that some, if not all, of the amended "Complaint[s]" were filed as a result of the defendants' motion practice.

## EVIDENCE AND TRIAL COURT RULING

On September 3, 1991, the district court held a hearing on the motions for summary judgment and the motion to strike pleadings and to dismiss filed on the ground that Waite was engaged in the unauthorized practice of law, thereby making the pleadings he filed a nullity. Waite appeared at that hearing with counsel from Cheyenne, Wyoming. Waite's counsel was a member of the Nebraska bar, but appeared solely for purposes

of the hearing rather than entering a general appearance as counsel in the cases. The evidence at that hearing included an affidavit from the executive director of the Nebraska State Bar Association stating that Waite is not an attorney licensed and admitted to practice in the State of Nebraska. A second affidavit was received from one of the defendants' attorneys, asserting that Waite had filed the pleadings and that they "were ostensibly drafted by Glenn R. Waite." The pleadings referred to in the defendants' affidavits included interrogatories and objections to interrogatories, as well as the "Complaint[s]." Waite filed his own affidavit, asserting that he was appointed as personal representative of the estate of Harriet Waite and that he was the plaintiff in the cases before the district court for Scotts Bluff County.

After considering the affidavits and testimony, along with the extensive pleadings, the district court found that the defendants were entitled to judgment as a matter of law, citing *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989). The district court further stated that there was no genuine issue as to any material fact and that "[s]ummary judgment of dismissal is entered for the defendants and against the plaintiff." Waite perfected his appeal to this court from the dismissal of the three lawsuits.

## ASSIGNMENT OF ERROR

Waite does not assert any procedural or evidentiary assignments of error. His sole assignment of error is that the district court erred in granting summary judgment and in dismissing the actions filed by Waite.

## DISCUSSION

It is uncontroverted that Waite is not an attorney, and therefore, the result in this case turns on whether he, as a nonattorney, was engaged in the unauthorized practice of law. The controlling statute is Neb. Rev. Stat. § 7-101 (Reissue 1991):

Except as provided in section 7-101.01 [relating to certified law students], no person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party,

either by using or subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state. No such paper shall be received or filed in any action or proceeding unless the same bears the endorsement of some admitted attorney, or is drawn, signed, and presented by a party to the action or proceeding. It is hereby made the duty of the judges of such courts to enforce this prohibition. Any person who shall violate any of the provisions of this section shall be guilty of a Class III misdemeanor, but this section shall not apply to persons admitted to the bar under preexisting laws.

There is no doubt than an individual may represent himself or herself and participate in trials and legal proceedings on his or her own behalf. See *State v. Warford*, 223 Neb. 368, 389 N.W.2d 575 (1986). However, it is equally clear that one who is not an attorney may not represent others in legal proceedings, nor may such a person practice law for others. The Nebraska Supreme Court in *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989), cited with approval the decision of the Supreme Court of Hawaii, *In re Ellis*, 53 Haw. 23, 487 P.2d 286 (1971), which held that a duly appointed trustee may not present pro se arguments in the courts of Hawaii because in this capacity, the trustee would be representing interests of others and would therefore be engaged in the unauthorized practice of law.

In the case at hand, Waite, as the personal representative, argues that he is representing himself as a party and therefore is not engaged in the practice of law. However, this is simply a misapprehension of the role of a personal representative. Under Nebraska law, a personal representative "is a fiduciary who shall observe the standards of care applicable to trustees . . . ." Neb. Rev. Stat. § 30-2464(a) (Reissue 1989). In the various "Complaint[s]," facts are alleged which assert predeath injuries by the defendants, or at least by some of them, to the decedent. Section 30-2464(c) gives the personal representative authority to bring suit on any cause of action which survives the

decedent's death. In addition, any action for wrongful death "shall be brought by and in the name of the person's personal representative for the exclusive benefit of the widow or widower and next of kin." Neb. Rev. Stat. § 30-810 (Cum. Supp. 1992). Finally, the wrongful death statutes create a cause of action unknown at common law and one to be brought only by the personal representative. See *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982).

An accurate characterization of these lawsuits is that they are wrongful death actions for medical negligence brought by a personal representative with the purpose, as stated in the first "Complaint" in each case, to recover damages for "the next of kin."

With the foregoing factual predicate based solely upon the allegations of Waite's various pleadings, we conclude that he is acting in a representative capacity in the courts of this state, contrary to the law of this state as expressed in § 7-101 and *Back Acres Pure Trust v. Fahnlander, supra.*

Waite attempts to overcome this obvious conclusion by asserting that since the defendants did not prove at the motion for summary judgment hearing that he was not the sole heir, he still may represent himself in bringing this action. Although we believe our conclusion that he is a nonattorney personal representative acting in a representative capacity is dispositive of this case, we address Waite's "sole heir argument."

As we understand Waite's proposition, a sole heir who is appointed as personal representative may bring a wrongful death action without being an attorney and still not run afoul of the statutes prohibiting the unauthorized practice of law. Part and parcel of Waite's argument is the claim that the burden of proof rests upon the defendants to show that Waite was not Harriet Waite's sole heir. Waite did not offer an affidavit or other proof at the hearing on the motion for summary judgment asserting that he was the sole heir. Nonetheless, we decline to adopt a rule of law built upon a factual subterfuge which Waite would perpetrate on this court, particularly when he obviously knows about Harriet Waite's family. The rule against nonattorneys appearing in a representative capacity cannot be avoided by subterfuge. See *Niklaus v. Abel*

*Construction Co.*, 164 Neb. 842, 83 N.W.2d 904 (1957).

Our inhospitable reception of Waite's argument is premised upon two grounds: (1) the law in this jurisdiction regarding the burden of proof in summary judgment proceedings and (2) various allegations in the "Complaint[s]" showing that Waite is not the sole heir.

Addressing the factual allegations first, in cases Nos. A-91-923 and A-91-924 there are allegations of "extra financial burdeons [sic] on spouse." In case No. A-91-925, there is an allegation that one of the defendant doctors recorded false information on the medical record "in reference to a family conference held on April 16, 1989," and further, that the decedent's "daughter requested resuscitation but none was done." Finally, in case No. A-91-923, Waite sets forth a quote from one of the defendant doctors: "I talked with her husband and they are going to begin remodeling the bathroom . . . ." Thus, from Waite's pleadings, there are allegations of a family, a daughter, and a spouse. This is the factual basis for our cold reception to Waite's sole heir argument.

Those factual allegations of Waite's various "Complaint[s]" are considered in conjunction with the often-cited rule that once the movant for summary judgment has established facts entitling him or her to summary judgment, the nonmovant has the burden of presenting evidence to show an issue of material fact which prevents a judgment as a matter of law. See *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). Even if we were to assume some validity in Waite's sole heir argument, it is abundantly clear that the burden was upon him to establish that he was the sole heir given his own allegations of the existence of "family," "spouse," "husband," and "daughter." He failed to do this, and therefore, no issue of material fact was present. Accordingly, we conclude that not only was Waite acting in a representative capacity as personal representative for the estate of Harriet Waite, but also that he was not the sole heir of Harriet Waite.

We now turn to the question of whether Waite was engaged in the practice of law. In the 3 cases under consideration here, there are a total of 14 "Complaint[s]" signed by Waite. As wrongful death actions, they are of the type which may only be

maintained by a personal representative, and as stated, a nonlawyer may represent himself or herself, but may not act as the legal representative for anyone else. This rule includes a nonattorney personal representative acting for an estate. Obviously, the personal representative who brings a wrongful death suit is bringing it for the benefit of the other heirs, and those persons are entitled to have their legal interests represented by one who is trained and licensed to do so. This is not to say that personal representatives must be attorneys, but, rather, that one who seeks to represent the legal interests of the personal representative must be an attorney. This rule protects the estate, its heirs, and its creditors.

The Nebraska Supreme Court has held that the term "practice of law" includes the trial of causes in court and the preparation of pleadings to be filed in court. *State, ex rel. Wright, v. Barlow*, 131 Neb. 294, 268 N.W. 95 (1936). See, also, *State, ex rel. Hunter, v. Kirk*, 133 Neb. 625, 276 N.W. 380 (1937); *Spier v. Thomas*, 131 Neb. 579, 269 N.W. 61 (1936). The statute, § 7-101, prevents the filing of any paper in any action "unless the same bears the endorsement of some admitted attorney, or is drawn, signed, and presented by a party to the action or proceeding." Here, the pleadings were not signed by an admitted attorney, but, rather, by Waite, and it is only where a party acts in a nonrepresentative capacity that he may file his own pleadings. There can be no question that Waite was engaged in the practice of law in violation of § 7-101.

The district court for Scotts Bluff County found that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law, citing *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989). The court entered summary judgment for the defendants against the plaintiff and dismissed Waite's actions. Accordingly, we now consider whether the district court correctly dismissed Waite's lawsuits.

In *Back Acres Pure Trust*, E.L. Peister, a nonlawyer and nonparty, filed a brief and argued to the Supreme Court on a pro se basis. The Supreme Court said that Peister had represented to the trial court that he was a trustee and that he would furnish the appropriate evidence thereof, but no such

showing was made. He had signed the appellants' brief on behalf of himself and the appellants, but in actuality he had no authority to appear pro se as a trustee "and certainly not as a representative of appellants." *Id.* at 29, 443 N.W.2d at 605. The Supreme Court said that because "Peister had no authority to file a brief in this matter, either in his own behalf or on behalf of appellants, appellants' briefs are ordered stricken, and the appeal is dismissed." *Id.*

*Niklaus v. Abel Construction Co.*, 164 Neb. 842, 83 N.W.2d 904 (1957), involved a petition with nine causes of action alleging illegal contracts, and payments thereunder, by the city of Lincoln to Abel Construction Company. The plaintiff, William Niklaus, brought the action "for the benefit and in behalf of the City of Lincoln" and prayed for judgment "for benefit of city of Lincoln, Nebraska" in the sum of $1,000,000. *Id.* at 843, 83 N.W.2d at 906-07. Niklaus was a disbarred attorney who had never been reinstated, and the court adopted the rule that " '[w]hile a layman may represent himself in court he cannot even on a single occasion represent another, whether for a consideration or not.' " *Id.* at 852, 83 N.W.2d at 911.

The court found that Niklaus conceived the action, made the investigation, and drafted the petition. He was characterized as "the moving spirit," and his participation was said to be "not casual but persistent and continuous." *Id.* The court adopted the rule that proceedings in a suit by a person not entitled to practice law are a nullity, and the suit may be dismissed. The court in *Niklaus* recognized that dismissal was a drastic remedy and is not required in all cases, but that the extent of the unlawful practice by Niklaus required dismissal. The court held that "[t]he flagrant and persistent unlawful practice of law in this case by Mr. Niklaus requires that the proceedings be held to be a nullity and the action dismissed." *Id.* at 852-53, 83 N.W.2d at 911.

At this juncture, we quote from *Niklaus*:

This action is not taken for the benefit of lawyers who are duly admitted to the practice of the law in this state. As was said by the Supreme Court of Colorado in Bennie v. Triangle Ranch Co., 73 Colo. 586, 216 P. 718, it is "for the protection of citizens and litigants in the administration of

justice, against the mistakes of the ignorant on the one hand, and the machinations of unscrupulous persons on the other . . . ."

164 Neb. at 852, 83 N.W.2d at 911.

We also find it appropriate to quote the rationale concerning the prohibition against the unauthorized practice of law from *State, ex rel. Wright, v. Barlow*, 131 Neb. 294, 268 N.W. 95 (1936):

This court possesses inherent power to protect itself and its officers from any unlawful interference with its functions as a court. This it may do, not only for the purpose of protecting the court and its officers, but in the interest of the public at large to prevent it from being exploited and injured by one unlawfully assuming to act as an officer of the court. There are many instances where persons' rights have been jeopardized and sacrificed because of following the counsel and advice of unlicensed persons, giving or attempting to give legal advice.

*Id.* at 302, 268 N.W. at 98-99.

In summary, the rule against nonattorneys practicing law for others is not to perpetuate a professional monopoly, but, rather, (1) to protect citizens from injury caused by the ignorance and lack of skill on the part of those who are untrained and inexperienced in the law, (2) to protect the courts in their administration of justice from interference by those who are unlicensed and are not officers of the court, and (3) to prevent the unscrupulous from using the legal system for their own purposes to the harm of the system and those who may unknowingly rely upon them.

We first address the administration of justice and observe that on September 3, 1991, the district court for Scotts Bluff County, with both judges present (apparently because of their method of assignment of cases), took up five lawsuits filed by Waite arising out of the death of Harriet Waite. We have only three of those five cases before us, but observe that there is an obvious multiplicity of litigation when one or two lawsuits surely would have covered all of the claims and the defendants. In addition, there is a corresponding multiplicity of effort on the part of the district court, and now this court, in dealing with

Waite's multiple cases.

Waite attempted to bring these lawsuits for the next of kin, which as we have observed quite probably included a husband, a daughter, and other family. He filed the lawsuits a matter of days before the running of the statute of limitations. It serves no purpose to discuss the allegations in detail except to observe that after numerous "Complaint[s]," Waite had not stated a proper cause of action. At the simplest level, to the extent that the heirs were relying upon Waite to prosecute a medical negligence action for the death of Harriet Waite, he was unable to take the basic first step by filing a proper *petition* which stated a cause of action against each of the people or entities he was trying to sue. To the extent that heirs relied on Waite, their reliance was misguided because he tried to do that which he was legally prohibited from doing, and obviously incapable of accomplishing.

In this regard, we observe that litigation involving allegations of medical negligence is difficult and specialized work. Duly admitted and licensed lawyers often seek the assistance of other lawyers who possess particular skills acquired through training and experience in order to ensure effective representation for their clients who seek to assert such claims. In other words, Waite was treading where some lawyers fear to go.

When we view the matter from the perspective of the defendants, W. Scott Carpenter and Regional West Medical Center were unnecessarily named as defendants in all three of these cases. Defendant Terry Himes was named in two of the cases. A person should not be vexed more than once for the same cause. See *Security State Bank v. Gugelman*, 230 Neb. 842, 434 N.W.2d 290 (1989).

We believe that the violations of the statutory prohibition against the unauthorized practice of law by Waite were flagrant and persistent. We do not know whether the cases have one shred of merit, but if so, the heirs may well have been harmed by Waite's unskilled attempts to prosecute these actions on their behalf. Finally, the defendants and the courts were unnecessarily vexed and faced with duplicative lawsuits.

Waite argues that the district court for Scotts Bluff County abused its discretion by failing to give him time in which to

secure counsel prior to the dismissal of the actions and that his multiple pleadings were in response to motions filed by the defendants. No authority is cited for the proposition that the defendants should defend less aggressively or allow the plaintiff to use improper pleadings merely because the lawsuit is being brought by one unauthorized to do so, and we think the law is clearly otherwise. If the district court for Scotts Bluff County, and now this court, were to allow Waite additional time for the retention of counsel instead of using dismissal as the remedy, then Waite would have engaged in the unauthorized practice of law to the possible detriment of the heirs, the defendants, and the courts with complete impunity. The district court did not abuse *its* discretion in failing to give Waite time to retain counsel. We decline to save him from the consequences of his acts. Given that Harriet Waite died nearly 2 years prior to the institution of suit, Waite had ample time to retain counsel prior to the filing of these cases.

For the reasons stated above, the decisions of the district court dismissing these three cases are affirmed in all respects.

AFFIRMED.